## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**                                                                **20-CR-286 RBW**

**HANALEI AIPOALANI**

### DEFENDANT'S SENTENCING MEMORANDUM

In nearly forty years of representing individuals in the United States District Court I have never had a client as gracious as Mr. Aipoalani.  In nearly forty years of representing individuals in the United States District Court who have been charged with Fraud, no other defendant has ever accepted responsibility pre-Indictment.  Mr. Aipoalani has accepted responsibility, exhibited great remorse and entered a Guilty Plea before this Court.  The Government was not forced to bring witnesses from Hawaii to Washington D.C. to present evidence before the Grand Jury. The Government was not forced to investigate all the facts of this case and to prepare for Trial.   Hanalei Aipoalani made a very consequential and responsible choice without ever meeting counsel in person--due to distance and the constraints of the Corona virus epidemic.  By agreeing to a pre-Indictment plea, he has saved the Government the cost of a Trial and given the Government a very early resolution of this matter.

All the locations of the misconduct and most of the witnesses are located in Hawaii. It would have been both difficult and very expensive for the Government to prosecute this case during the Corona virus epidemic. Aipoalani's deep remorse and immediate and early acceptance of responsibility should be recognized by the Court.  We are requesting the Court consider his contrition and pre Indictment plea as a factor to be considered in our request for a downward variance from the United States Sentencing Guidelines.  While a sentence within the guidelines would reflect the seriousness of the offense, a sentence of 57 months, is greater than necessary in consideration of the listed 18 USC §3553 factors.

The second factor we ask the Court to consider is the role of "Face" in the Asian Pacific Islander culture,  and how it applies to an appropriate punishment for Aipoalani. The seriousness of his offense hit Hanalei when he was dismissed from his job. The punishment began with a loss of his job and the loss of his respected position in the community.  As the news of his crimes spread in the community, he "lost Face".  Shame and the "loss of Face"  are of enormous importance in the Asian Pacific Islander culture of Hawaii.  The press has damned the defendant.  He has been shamed in his church, in his city and in his community.  He has lost a position of respect.  He has brought shame to his parents. To his siblings.  To his wife.

 Hanalei recognizes that his own actions caused his humiliation.  No one else is to blame for his actions.  Nonetheless the loss of "Face" in the Hawaiian culture is a very real punishment.  "Losing Face" is much more intense than suffering embarrassment or shame. In extreme cases it can be like losing all the senses, or losing one's place in life. Complete loss of Face is like full exile – you become a non-

person, even to family and close friends. You can't speak or be spoken to. You can't be heard or seen. You are just not present.

*King and Bond (1985) defined "face" as a collective property, where losing or saving face concerns not only the individual involved, but also his or her family or group. It is related to the concept of group harmony in Taoism as well as interpretations of Confucianism (Johnson et al., 1995; Pedersen, 1991; Yamashiro & Matsuoka, 1997). "Face" reflects on both the individual's achievements as well as on those of his or her family or group, and it is important for individuals to maintain or save face not only to preserve their own prestige, but also that of the family or group. In this way, saving face serves to maintain group harmony. Thus, because of the social stigma attached to mental illness in Asian cultures, individuals are reluctant both to express problems as psychological in nature and to seek professional psychological help. Doing so implies that the individual has a serious problem, which would reflect poorly on her or his group.*

See: Asian and Pacific Islander American Men's Help-Seeking: Cultural Values and Beliefs, Gender Roles, and Racial Stereotypes

"Loss of face" is a grave punishment for Mr. Aipoalani.  In the Asian Pacific Island culture the collective is dominant over the individual.  We ask the Court to consider this fundamental cultural factor when evaluating the 18 § 3553 factors of punishment and deterrence as they apply to Mr. Aipoalani. The Court shall impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from further crimes of the defendant. . . "Loss   face" addresses the concerns of both punishment and deterrence. 18 § 3553.

A third factor we ask you to consider in determining the appropriate a sentence, is the role of restitution. Restitution is a mandatory requirement of his plea agreement. Compensation of the victim is a form of restorative justice, as well as a punishment. Restitution has gained importance in the last fifty years and is

becoming more utilized as a component of criminal sentencing. Restitution requires the defendant to repay the debt to society he incurred through his offenses in a more commercial sense and perhaps in a more humane sense. In addition to enduring retribution Aipoalani can pay his debt to society through hours of valuable service to the community and restituion.

Individuals who serve prison sentences do not have opportunity to repay the communities and individuals they harmed.  Modern criminal justice ideas and modern technology make actual incarceration less necessary. And alternatives to incarceration possible. A non-violent individual like Aipoalani should have the opportunity to perform compensatory services. The Court has more possibilities to create a just sentence, using valuable forms of restorative justice that actually recompense the community. Alternatives to incarceration are less punitive and more valuable than imprisonment alone. More intensive probation, jail time served on weekends, and/or house arrest would allow Hanalei to perform community service and begin to make restitution payments, while serving his sentence. A sentence of compensatory punishment would permit Hanalei to serve jail time on the weekends, but work and live at home during the week. This would also save the government the considerable cost of incarceration.

Restitution fits in quite well with the traditional Asian Pacific Islander purposes of punishment. Uncompensated labor is a very unpleasant experience. House arrest, weekends in jail, community service and commenced payments to the government, serve as adequate deterrence and retribution while promoting a less problematic reentry into the community. Electronic monitoring devices and strict probation would restrain Aipoalani from committing further crimes. "The potential for rehabilitation is considerably stronger for individuals who are given the opportunity to work and  to give back to the people they've injured, and to society as a whole. "  See *Up Counsel*, 2021

As part of his mandated restitution, Aipoalani has already turned in the family automobile. He has a huge  monetary debt to pay the United States.  After his conviction of a felony, he will be precluded from most employment for which he has been qualified and also excluded from public service jobs he has  formerly held.   His wife is also pleading guilty, and will have similar employment disqualifications. Both parents will have difficulty paying household bills, restitution and taking care of their children.

 Sentencing "justice" does not require the Court to impoverish the family, nor to place Aipoalani so deeply in a financial hole that he cannot recover.  While the offense is very serious it does not warrant lengthy incarceration, family separation, and impoverishment.   The Court should consider the financial consequences collateral to this conviction when considering a downward variance. The sooner Mr. Aipoalani can return to "normal" after any period of incarceration, the greater the possibility he has to rehabilitate himself, to find gainful employment to support his family and to be able to satisfy his restitution obligations.

Crucially, the Court must consider 18 § 3553 (6) which proscribes unwarranted sentencing disparities. "The Court shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. " In reviewing the Statistical Information Packet issued by the United States Sentencing Commission for the year 2020, thirty five (35)  individuals were sentenced for Fraud/Embezzlement  in the D.C. Circuit in Fiscal Year 2020.   Of those individuals only 54% or (19) were sentenced to prison; 8.6% (3) were sentenced to prison and alternatives;   8.6 %(3) were sentenced to Probation and Alternatives;  28.6% (10) were sentenced to Probation only. [Att. 1]

Hanalei Aipoalani acknowledged the seriousness of his offenses by entering a pre-indictment plea.  His pre Indictment plea, his contrition and a Criminal History of zero should place him in the category of the 28.6% of individuals who were sentenced to probation only or in the category of the 8.6% of individuals sentenced to probation and alternative sentences.  A short period of incarceration followed

by home confinement  or  to weekends in jail would promote community reentry. Hanalei Aipoalani has until now had a stellar reputation and been beloved and respected in his community. His criminal history score is zero.  He begs the Court, with great humility, to consider a sentence shorter than 57 months.  He is begging the Court to consider a variance to allow a sentence of Home Detention or Community Confinement.  [Att. 2]

Under the particularized situation of Mr. Aipoalani it is reasonable and fair to consider alternatives to incarceration in order to create a just sentence and "to avoid unwarranted sentencing disparities."  18 § 3553(6).   In Fiscal Year 2020 the Mean Months of a sentence in the D.C. Circuit for the 35 defendants sentenced in for Fraud was 12 months.  The Median sentence was  8 months.  The average variance for in D.C Circuit was 34%. [Att. 1]

As there is no Federal Prison in Hawaii. Mr. Aipoalani, on the advice of counsel,  has reviewed Federal Prison camps in California, Oregon and Washington to prepare for Sentence. The government has informed counsel that FCI Lompac California, would be an appropriate placement.  We emphasize to the Court, any placement in a Federal Prison would locate him at least 2500 miles from home. Imprisonment across the Pacific Ocean is tantamount to exile.  No family member could take a bus or drive visit him.  His elderly parents are unlikely to be able to visit him. His wife will be under restraint and probably unable to visit him.  The isolation of being incarcerated so far from home and children is like exile.  The heightened pain of exile is a factor the Court should consider. Further, we call attention to the extreme heat wave and forest fires in California, Washington and Oregon today. The threat of exposure creates unhealthy and hazardous conditions for all coastal citizens, including the incarcerated citizens.

The Court is requested to read the many letters submitted by family, co-workers and friends on behalf of Hanalei Aipoalani.  They  speak to the shock that such a good man is guilty of his admitted misconduct.  They speak to his great humanity and his lifetime of improving the circumstances of individuals and the

community.  The letters address his dedication to  family and  community and a lifetime of good acts. The history and characteristics of Hanalei Aipoalani must be considered along with the nature of this aberrant offense.   Everyone who wrote speaks of his lifetime of good work to make the world a better place.  "I was knocked to my knees to hear about his recent case, as he has been someone who would give the shirt off his back to help someone else."  See  Fauta letter .  [Att.3]

## Conclusion

It is not necessary to make an example of the defendant.   The entire community knows what happened.  It was described in every newspaper in Hawaii and discussed on television, on the radio and in the professional community.  Mr. Aipoalani is a well known and  much loved public figure.  His early plea shows his immediate remorse and respect for law.  His actions were a criminal lapse and very stupid.  They were the worst thing he has done in his life.  In balance, he should not be judged by the worst actions he has ever taken.  His misdeeds must be balanced by a lifetime of generosity, hard work, community service, and dedication to his family. All human beings make mistakes.  His crime is entirely monetary.  He did not pollute the air or contaminate the water.  He did not poison our earth.  He did not physically assault or physically injure anyone.  He committed a serious breach of trust against the United States.  For this he will be punished. But the punishment should fit the crime.

Please show mercy. Do not wrench him away from his wife and children.  Do not exile him from the community and the family he loves. If you feel you must sentence him to jail, a short period of incarceration is more than sufficient.  A sentence of a year and a day would comport with sentences of 8 median months or 12 Mean Months imposed on other similarly situated individuals in the D.C. Circuit.

By the grace of your long judicial experience, and the move away from punitive sentencing and toward more enlightened justice, please allow him to

remain in Hawaii on Home Detention for a 12-24 months.  Fifty seven months incarceration in exile is much more time than is necessary or just in consideration of  the 18 § 3553 sentencing factors.  Such a sentence would violate the requirement that the Court impose a sentence that is "not greater than necessary...and to avoid unwarranted sentencing disparities." 18 § 3553(6).  Aloha. Go in peace.


Respectfully submitted,

_____hhs_____

H. Heather Shaner #273276

Appointed by the Court